IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALBERT CURTIS MILLS,
    Plaintiff,

v.                             CIVIL ACTION NO. DKC-06-2313

BERKELY GHEE, et al.,
    Defendants.

***

## **MEMORANDUM OPINION**

Pending are the motions of Medical Defendants Correctional Medical Services, Inc. and Rick Leonard (ECF No. 27), and Correctional Defendants Lehrman Dotson, Wayne Hill, James Smith, and Carlton Thompson (ECF No. 43) to dismiss or for summary judgment.[1]  Plaintiff has not responded.[2]  Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2011).

### **Background**

In early November of 2005, a mass movement of prisoners from the Maryland House of Correction (now known as Jessup Correctional Institution or "JCI") to the Maryland Correctional Adjustment Center ("MCAC") occurred.  ECF No. 43, Ex. A.  Plaintiff was part of the movement.  He alleges that on November 7, 2005, during the transfer, he was verbally abused by Defendant Ghee.  He further alleges that Ghee applied his waist chains too tightly causing injury to his back.

---

[1] The Complaint has not been served upon Defendants Ghee, Hicks, Brown, Nurse Rose Doe, or Nurse Yami Doe.  For the reasons that follow, even if the Complaint had properly been served upon Defendants Hicks, Brown, Rose Doe and Yami Doe, Plaintiff's complaint against them would be subject to dismissal.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on February 4, 2011 and June 22, 2011, Plaintiff was notified that Defendants had filed dispositive motions, the granting of which could result in the dismissal of his action. ECF Nos. 28 & 44. Plaintiff was informed that he was entitled to file materials in opposition to that motion within seventeen (17) days and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*

Plaintiff states that Defendants Faison, Thompson, Smith and Hill did nothing to stop the verbal abuse or ease the restraints. Plaintiff further alleges that once housed at MCAC he was denied adequate medical care for the injury to his back.

Lastly, Plaintiff states that while housed at MCAC, on three separate occasions, his waist chains were applied too tightly by Defendants Mackey, Brown and Hicks causing further injury to his back. Plaintiff claims Warden Dotson was aware of this but failed to take any corrective action. ECF No. 1.

## Standard of Review

Under revised Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Discussion**

1. Facts

According to Correctional Defendants, on November 7, 2005, Defendant Thompson was supervising the move of several inmates from JCI Special Housing Unit. Defendant James Smith was the Warden of JCI at this time and Defendant Hill was the Assistant Warden. Smith and Hill oversaw

the general operation of the mass transfer. Each inmate was removed from the cell individually, escorted to the dayroom, strip-searched, placed in mechanical restraints, and escorted to a waiting bus. Thompson had no physical contact with any inmate throughout the transfer process, nor did he participate in escorting any inmate throughout the process. He avers that he did not hear any officer verbally abuse an inmate or see any officer physically abuse an inmate. Thompson further avers that at no time did Plaintiff speak to him regarding his restraints. Thompson states that, had an inmate made a complaint, the restraints would have been checked immediately and if they were too tight an officer would have been directed to reapply them. *Id*., Ex. A.

Smith avers that he and Hill were in the vicinity of the transporting vehicles as inmates were brought to them. Smith does not recall Plaintiff speaking to him or Hill. He recalls several inmates complaining about their restraints. He states that before boarding the bus all inmates had their restraints checked by the escorting officers from the Central Transportation Unit ("CTU"). Smith avers that he heard no inmate complain about his restraints after the CTU officers made any necessary readjustment to the restraints. Smith further avers that if Plaintiff had complained, it was the responsibility of the CTU officers to ensure that he was properly restrained for transport to MCAC. *Id*., Ex. B.

Defendant Lehrman Dotson was the Warden of MCAC during Plaintiff's incarceration. He does not recall receiving a letter from Plaintiff concerning application of restraints at MCAC. Dotson avers that had he received such a letter he would have assigned the complaint to a staff member for investigation. If Plaintiff had made the complaint through the Administrative Remedy Process ("ARP") it would have been routed to the ARP Coordinator and assigned to a staff member for investigation. *Id*., Ex. C. Plaintiff filed numerous ARPs while housed at MCAC, only one of which

4

concerned the application of waist chains.³ In that complaint he alleged Defendant Mackey applied a waist chain too tightly which caused him pain. *Id*., Ex. D, p. 167-73.

According to the Medical Defendants, on November 11 and 16, 2005, Plaintiff filed sick call slips complaining of back pain which he claimed began on November 7, 2005. Plaintiff was evaluated by Cherelle Reddick-Lane, M.D. on November 22, 2005, because he was on a hunger strike. At that time, Plaintiff offered no complaints regarding his back. ECF No. 27, Ex. B & C, p. 1-4.

Plaintiff was next evaluated on December 6, 2005, by a nurse who noted Plaintiff claimed his back pain was caused by a waist chain that had been applied too tightly during his transfer to MCAC. Plaintiff was given Tylenol and an analgesic balm to apply to his back. Plaintiff did not complain again of back pain until he filed a sick call slip on December 20, 2005. He stated he was in constant pain and unable to sleep. A nurse evaluated Plaintiff on January 3, 2006, and gave him one dose of Motrin, aspirin to take every four to sick hours as needed, and analgesic balm to apply to his back. He was advised to return to the dispensary if his pain did not improve. *Id*., p. 3, 5.

Plaintiff next submitted a sick call sip on January 18, 2006, complaining of back pain. He advised the nurse who evaluated him that he experienced more pain on sitting and less pain while lying down. He denied that the pain radiated down his legs. The nurse provided Plaintiff one dose of Motrin as well as four tablets of aspirin to take as needed. *Id*., p. 6

Plaintiff did not complain again of back pain until April 18, 2006, when he submitted a sick call slip complaining of seizures and constant back pain. He was evaluated by a nurse on May 2, 2006, and stated that he had been in constant back pain since November, 2005. Plaintiff said he was

---

³ Plaintiff filed several ARPs concerning Ghee's interaction with him during the transfer. ECF No. 43, Ex. D.

5

not in acute pain and the pain worsened when he lay down. The nurse gave him one dose of Motrin and two tablets of Tylenol to take as needed. *Id*., p. 7.

Plaintiff did not again complain of back pain until he submitted a sick call slip on September 26, 2006. He attributed his back pain to the use of waist chain restraints on November 7, 2005, and sought a doctor's order discontinuing any future use of waist chains. The nurse who evaluated Plaintiff advised him that the use of waist chain restraints was a matter of security and out of the control of medical staff, and also advised Plaintiff that he had no outstanding conditions which would limit the use of such a restraint. The nurse evaluated Plaintiff and observed his gait was steady. She instructed him on proper body mechanics and gave him six Tylenol tablets to use as needed. Plaintiff was advised to return to the medical unit if his condition did not improve. *Id*., p. 8.

Plaintiff was evaluated by Dr. Reddick-Lane on November 22, 2006, due to his complaint of inhaling mace on October 14, 2006. During the evaluation Plaintiff advised Dr. Reddick-Lane that he suffered from chronic back pain. Upon examination Dr. Reddick-Lane noted Plaintiff had some tenderness to the touch around his spine but not directly over his spine. Dr. Reddick-Lane prescribed muscle rub for Plaintiff to apply to his back. Plaintiff offered no further complaints of back pain while incarcerated at MCAC. He was transferred from MCAC on or about January 6, 2007. *Id*., p. 9-12.

2. Legal Analysis

A. Respondeat Superior

As a fundamental element of § 1983 liability, Plaintiff must show that the named Defendants were involved in the alleged deprivation of his constitutional rights. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*,

275 F.3d 391, 402 (4th Cir. 2001). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001), *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994).

Plaintiff has pointed to no action or inaction on the part of Defendants Correctional Medical Services, Inc. ("CMS") and Richard Leonard that resulted in a constitutional injury.[4] *See Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1997) (doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 actions). It remains uncontroverted that CMS and Leonard had no direct involvement in Plaintiff's medical treatment or any aspect of his health care.

Plaintiff's claims against Dotson, Hill, Smith, Faison, and Thompson also are subject to dismissal. Plaintiff claims that each Defendant was aware of the improper use of restraints against

---

[4] Richard Leonard served as the Health Services Administrator for the Jessup Region from July 1, 2005- through January 23, 2006. From January 24, 2006 through later 2008, he served as a registered nurse for CMS in the Jessup Region. MCAC is not located in the Jessup Region but rather is in the Baltimore Region. Leonard's role as HSA for the Jessup Region at the time of Plaintiff's transfer was purely administrative. He did not provide any care to Plaintiff, nor was he responsible for providing any medical care to Plaintiff or overseeing the medical care of inmates housed in the Baltimore Region. ECF No. 27, Ex. A.

7

him and as supervisors failed to act. To the contrary, Hill, Smith, and Thompson aver that they were not aware of any abuse of Plaintiff and had they been aware that Plaintiff's waist chains were applied improperly they would have taken corrective action. Further, Smith avers that in general any inmate who complained that his restraints were applied improperly during the mass transfer of inmates had his restraints checked by the CTU prior to the transfer and restraints were adjusted. He further avers that after restraints were checked he heard no inmates continue to complain. Ultimately, the responsibility for the proper placement of the restraints on the inmates subject to the mass movement rested with the CTU, and not with any of the named supervisory Defendants.

Additionally, Dotson avers that any complaint regarding improper use of restraints forwarded to him while he was the Warden at MCAC would have been investigated. The record evidence demonstrates that Plaintiff filed only one complaint regarding the use of restraints while housed at MCAC. The claim was investigated and found to be without merit. ECF No. 43, Ex. D, p. 167-173.

Given the foregoing, the court cannot find that any of the named correctional supervisors' response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged improper use of restraints.

B.   Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a

claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

While Defendants Hicks, Mackey and Brown have either not been properly served with the complaint or have failed to respond to same,[5] Plaintiff's claims against these Defendants are subject to dismissal. Plaintiff has simply and baldly alleged that each Defendant, on one separate occasion, applied his waist chain too tightly. Plaintiff does not indicate the circumstances surrounding the application of the restraint or whether he advised the officer the restraints were applied too tightly. Most importantly, giving Plaintiff's complaint a liberal construction, Plaintiff does not allege that Mackey, Brown, or Hicks acted maliciously or sadistically to cause him harm. To the contrary, Plaintiff alleges simply that the Defendants applied the restraints too tightly which caused him harm. He does not allege that they intended to do so. Accordingly, Plaintiff's claims against Mackey, Brown and Hicks shall be dismissed.

Plaintiff alleges that Defendant Ghee used excessive force against him by applying the waist chains too tightly in an effort to "abuse" him. He states that he advised Ghee the waist chains were too tight and he would not resist the application of the restraints. He further claims that Ghee was verbally abusive to him during the application of the waist chains as further evidence of Ghee's

---

[5] Counsel for Correctional Defendants was directed to provide the last known address for Defendants under seal for service of the complaint upon them by the United States Marshal Service. The summonses for Mackey and Faison were returned on May 3, 2011, indicating service was effected. ECF Nos. 38 & 39. The summonses for Brown, Ghee, and Hicks, issued January 20 and 31, 2011 (ECF Nos. 23 & 25), have not been returned by the United States Marshal. The United States Marshal shall be directed to advise the court what, if any, efforts were made to serve those Defendants, and the results of those efforts.

9

malicious intent. In a matter of record prepared in response to Plaintiff's administrative remedy request filed regarding the application of the restraints by Ghee, Ghee provided a statement to the investigation officer indicating that he "did not apply restraints to Inmate Albert Mills 173-446 extra tight. This inmate never complained of discomfort to me." ECF No. 43, Ex. D, p. 45. Plaintiff has stated a claim against Ghee which cannot be resolved based on the evidence before the court. Once the Marshal reports on the efforts to serve him, it can be determined whether to proceed.

C. Verbal Abuse

"[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, Plaintiff's allegation that Defendant Ghee verbally harassed him and Defendant Faison failed to intervene fails to state a claim.

D. Medical Claims

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

Had Plaintiff named proper parties, or Defendants "Nurse Rose Doe" and "Nurse Yami Doe" been properly served, his complaint nonetheless would be subject to dismissal. The record shows that Plaintiff received evaluation and conservative treatment for his back pain while housed at MCAC. Disagreement with the course of treatment does not constitute an Eighth Amendment deprivation and would set out, at best, a claim of medical negligence which is not actionable under 42 U.S.C. § 1983.

**Conclusion**

For the aforementioned reasons, Defendants' Motions, construed as motions for summary judgment, shall be granted. Plaintiff's complaint against Defendants Faison, Hicks, Mackey, Brown, Nurse Rose Doe, and Nurse Yami Doe shall be dismissed. A separate Order follows.

Date:  September 14, 2011          /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge